James Michael SWEETEN, on behalf of himself and all others similarly situated, Plaintiff,

v.

Charles H. SNEDDON and E. F. Ziegler, Judges of the City Court of Ogden City, Weber County, State of Utah, individually and as representatives of all other Utah Judges similarly situated, Defendants.

No. NC 49–70.

United States District Court,
D. Utah, N. D.

Jan. 7, 1971.

On Submission for Final Decision
March 22, 1971.

Paul D. Vernieu, Ogden, Utah, for plaintiff.

Vernon B. Romney, Atty. Gen., Harry E. McCoy, Asst. Atty. Gen., for the State of Utah, Salt Lake City, Utah, and Robert L. Newey, Asst. Weber County Atty., Ogden, Utah, for defendants.

## MEMORANDUM DECISION

CHRISTENSEN, District Judge.

This case involves questions relating to the necessity of convening a three-judge court, the propriety of a class action in such a case as this, whether the named plaintiff has standing at this time to raise, either by injunctive or declaratory action proceedings, constitutional issues growing out of a state court proceeding, and, if so, whether the refusal by a state court judge to appoint counsel for plaintiff in a misdemeanor case violated any constitutional right.

Jurisdictionally founded on 28 U.S.C. § 1343(3) and (4),[1] claim is made of violations of the Civil Rights Act of 1871, 42 U.S.C. § 1983.[2] While declaratory judgment is sought in reliance upon 28 U.S.C. §§ 2201 and 2202, and the allegations of the complaint and its prayer for relief are limited to such ultimate remedy, plaintiff has asked for the convening of a three-judge court, 28 U.S.C. §§ 2281 and 2284, "since this action attacks the constitutionality of a statute of the State of Utah with general, statewide application."

The plaintiff stands charged before the City Court of Ogden City, Utah, with the misdemeanor of exhibiting a deadly weapon in an angry or threatening manner in violation of Utah Code Ann. § 76–23–3 (1953). Plaintiff's indigent status is clear, but despite an appropriate and timely submission Judge Ziegler denied a motion for the appointment of counsel at public expense on the grounds that inasmuch as plaintiff was not charged with a crime in which the penalty to be imposed could be confinement for more than six months in either jail or prison the court was precluded from appointing counsel by the provisions of Utah Code Ann. § 77–64–2 (Supp. 1969).[3] It is alleged that plaintiff's trial without counsel is imminent and that he is unable personally to retain legal representation.

While the offense with which plaintiff is charged is punishable by imprisonment of not to exceed six months, as well as a fine of less than $300, plaintiff points out that his status as a parolee after conviction of a felony will

---

1. "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:
   " *    *    *
   "(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;
   "(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote."

2. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

3. *"Assignment of counsel on request of defendant or order of court.*—Assigned counsel shall represent each indigent person who is under arrest for or charged with a crime in which the penalty to be imposed could be confinement for more than six months in either jail or prison, if:
   "(1) The defendant requests it, or
   "(2) The court, on its own motion or otherwise, so orders, and the defendant does not affirmatively reject of record the opportunity to be represented."

or may be affected by a verdict of guilty on the misdemeanor charge; thus he is confronted by the risk of imprisonment well beyond six months.

A temporary order restraining the misdemeanor trial has been issued and the present question for resolution, beyond procedural matters, is whether this order should be continued in effect as a preliminary injunction pending final determination of the case.

As to the request for a three-judge court, there are two reasons leading to the conclusion that this is not a proper case.

■ First, it is doubtful that the constitutionality of any state statute really is under attack. Section 2281 of Title 28, U.S.C., provides that an interlocutory or permanent injunction restraining the enforcement, operation or execution of any state statute or of an order made by an administrative board or commission acting under state statute shall not be granted by any federal district court "upon the ground of the unconstitutionality of such statute" unless the application is determined by a three-judge court.

The state statute mentioned in the complaint and quoted hereinbefore in the margin, Utah Code Ann. § 77–64–2 (Supp. 1969), expressly authorizes the appointment of counsel in cases where the potential penalty exceeds six months imprisonment, but does not by its terms preclude the appointment of counsel, in the discretion of the court, in cases involving a lesser maximum penalty. Hortencio v. Fillis, 25 Utah 2d 73, 475 P.2d 1011 (1970). The Utah Legislature has additionally declared, Utah Code Ann. § 77–64–1 (Supp. 1969), minimum standards to be provided by each county for the defense of defendants who are financially unable to obtain an adequate defense in criminal cases in the courts and various administrative bodies of the State of Utah, including, among other things:

"(1) [Provision of] counsel for every indigent person unable to employ counsel who faces the possibility of the deprivation of his liberty or other serious criminal sanction."

What plaintiff seems to be asking here is not to enjoin the operation or execution of either of these statutes as such but to extend their operation, interpretation or application uniformly to misdemeanor prosecutions as well as felony cases, or, independently of any statute, to have this court determine that in any criminal proceeding involving an indigent defendant who faces possible incarceration the failure to appoint counsel would be in derogation of right to counsel vouchsafed by the Constitution of the United States either directly or through the due process clause of the Fourteenth Amendment.

It has been suggested in another context, in comments concerning Adickes v. S. H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), that the Supreme Court has left unanswered the question whether state action may be found in the statutory elimination of a remedy, thus rendering the discrimination encouraged by the absence of the remedy actionable under the Civil Rights Acts, 42 U.S.C. § 1983. The Supreme Court, 1969 Term, 84 Harvard L.Rev. 1, 81 (1970). It is pointed out that once it has been decided, as a matter of federal constitutional law, that a certain interest is to be protected by the Constitution, it is arguable that the failure of a state to have provided a remedy for the vindication of that interest should itself be held to constitute the sort of state action required to call into play federal remedies under the Civil Rights Acts. But to extrapolate from such a rationale the proposition that a three-judge court also could be brought into play would be unjustified.

■ A second negation of any necessity for a three-judge court is that a restraint or injunction against the enforcement of any state statute is not sought in the complaint. While the claim is made that the section 77–64–2 limitation to felonies is arbitrary, il-

legal, unconstitutional and void as it denies to plaintiff and his class the constitutional right to the assistance of counsel at public expense, the plaintiff's claim and prayer are limited to injunctive relief against being prosecuted in the court without the assignment of counsel and a declaration of the right to appointed counsel under such circumstances. If we disregard the class action element of the case this may mean simply that the facts peculiar to the present case present such a special situation that the power of the court recognized in *Hortencio, supra,* to appoint counsel in cases involving sentences less than six months must be applied as an element of due process. Be this as it may, the fact remains that no injunction against the enforcement of the state statute is sought.

■ The convening of a three-judge court under these circumstances would be improper and the single judge to which the case is assigned has jurisdiction to dispose of the case as the facts and the law may warrant. *See* Gunn v. University Committee, 399 U.S. 383, 90 S.Ct. 2013, 26 L.Ed.2d 684 (1970); Tyler v. Russel, 410 F.2d 490 (10th Cir. 1969); Board of Education v. Oklahoma, 409 F.2d 665 (10th Cir. 1969). *Cf.* Petuskey v. Rampton, 431 F.2d 378 (10th Cir. 1970). The three-judge court statute should not be construed liberally as a measure of broad social policy; it is a technical enactment to be applied as such. Phillips v. United States, 312 U.S. 246, 250–251, 61 S.Ct. 480, 85 L.Ed. 800 (1941). It would hardly be faithful to such (a literal) construction to read the statutory term "injunction" as meaning "declaratory judgment". Notwithstanding the commencement of the action nominally as one for three judges, the single judge to whom the case is assigned continues with jurisdiction to make such declaratory determination as may be within the competence of the district court apart from the three-judge court statute. *See* Kennedy v. Mendoza-Martinez, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.

2d 644 (1963); New Orleans Book Mart, Inc. v. Mitchell, 318 F.Supp. 352 (M.D. Fla. 1970). *Cf.* Rosado v. Wyman, 397 U.S. 397, 401–405, 90 S.Ct. 1207, 25 L.Ed. 2d 442 (1970). We shall proceed, therefore, to a consideration of the other questions involved here.

The constitutional necessity and justification for assistance of counsel in criminal cases in general and in felony cases in particular is too well and authoritatively supported and documented to justify further comment here. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932).

Whether the right to counsel must be extended to misdemeanor charges such as this presents no frivolous or light problem to be regarded at this stage of the proceeding as insubstantial. On the contrary, it may well be that the right to appointed counsel cannot be parceled out to those who are in jeopardy of losing their liberty for more than six months and denied those who may be jailed up to six months without encountering insurmountable obstacles under the equal protection guaranty of the Fourteenth Amendment or be denied at all to the latter class among others by reason of the Sixth Amendment. Matthews v. Florida, 422 F.2d 1046 (5th Cir. 1970); Capler v. City of Greenville, 422 F.2d 299 (5th Cir. 1970); James v. Headley, 410 F.2d 325 (5th Cir. 1969). *See* Beck v. Winters, 407 F.2d 125 (8th Cir.), cert. denied, 395 U.S. 963, 89 S.Ct. 2104, 23 L.Ed.2d 749 (1969); Goslin v. Thomas, 400 F.2d 594 (5th Cir. 1968); McDonald v. Moore, 353 F.2d 106 (5th Cir. 1965); Harvey v. Mississippi, 340 F.2d 263 (5th Cir. 1965); Phillips v. Cole, 298 F.Supp. 1049 (N.D.Miss.1968). *Cf.* Application of Stapley, 246 F.Supp. 316 (D. Utah 1965). *But see* Kennedy v. Commandant, 377 F.2d 339 (10th Cir. 1967). The Supreme Court has not yet spoken specifically with reference to misdemeanor cases but its declaration in the landmark decision of Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792

(1963), *supra,* likely presages the further step which seems to be commended by the importance of counsel under our adversary system: "[I]n our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him." 372 U.S. at 344, 83 S.Ct. at 796.

■ Even though there may appear probable constitutional cause otherwise, ordinarily federal courts decline to interfere with proceedings in state courts, save in those exceptional cases which call for the interposition of a court of equity to prevent irreparable injury which is clear and imminent. Douglas v. City of Jeannette, 319 U.S. 157, 163, 63 S.Ct. 877, 87 L.Ed. 1324 (1943); Stefanelli v. Minard, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138 (1951); Gordon v. Christenson, 317 F.Supp. 146 (D. Utah 1970) (three-judge court). *Cf.* Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). "[T]he mere possibility of erroneous initial application of constitutional standards will usually not amount to the irreparable injury necessary to justify a disruption of orderly state proceedings." 380 U.S. at 484–485, 85 S.Ct. at 1120. *See also* No. C–3–70, Nash v. Ward (D. Utah 1970) (unpublished) denying a declaratory judgment and injunction concerning state criminal proceedings.

It remains to determine whether the circumstances presented here are of such extraordinary character as to justify intervention upon the present showing.

Here, if we accept the thesis that there is a right to counsel in misdemeanor cases, we do not have the mere potential of an unconstitutional application as in *Gordon, supra,* but a deprivation already considered and accomplished by the defendant judge who has held that he does not have the power to, and will not, assign counsel despite plaintiff's found impecuniosity. This decision receives

support from an opinion of the Supreme Court of the State of Utah, at least to the extent of its holding that there is no *constitutional* right to appointed counsel under the circumstances. Hortencio v. Fillis, 25 Utah 2d 73, 475 P.2d 1011 (1970), *supra.* While this circumstance alone has not been thought to dispense with the necessity of the exhaustion of state remedies in a habeas corpus context, Whiteley v. Meacham, 416 F.2d 36 (10th Cir. 1969); [4] United States ex rel. Waldron v. Pate, 380 F.2d 94 (7th Cir. 1967), cert. denied, 389 U.S. 1054, 88 S.Ct. 801, 19 L.Ed.2d 849 (1968); Pierce v. Wilson, 306 F.Supp. 91 (D. Utah 1969), it is persuasive here that at least as far as the immediate effects of the deprivation of counsel is concerned, any amelioration of the situation would not be anticipated in the lower state courts.

■ As recognized in Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55 (1932), *supra,* the mere deprivation of counsel as such does not authorize the bypassing of state procedures. The situation here is further distinguishable, however, because of the pendency of revocation proceedings which ordinarily depend upon the results of intervening trials of the parolee on additional charges of criminal law violations. If the plaintiff is convicted on the instant criminal charge the revocation of his parole seems likely, as it appears unlikely that the administrative agency, the State Board of Pardons, will nicely balance or take into consideration a constitutional argument which the State Supreme Court has rejected generally—nor should it. How the constitutional problem could be unraveled in the event of a conviction on the misdemeanor charge and a consequent revocation of parole is difficult to tell. In any event, it is likely that in the process plaintiff would spend in jail, not only whatever sentence he might suffer for the misdemeanor if convicted, but also the balance of his present sentence,

---

4. Certiorari has been granted in this case limited to the issue of constitutionality

of arrest and search, 397 U.S. 1062, 90 S.Ct. 1505, 25 L.Ed.2d 683 (1970).

which could substantially exceed six months.

We have here, therefore, more than the ordinary consequences of a conviction, subject to review, but a substantial risk of imprisonment for more than six months without the aid of counsel to represent him against such eventualities, so far as they may depend on the misdemeanor prosecution.

■ Upon consideration on the merits following investigation and discovery, it is possible, of course, that this case may not present such extraordinary circumstances as to warrant departure from the general rule of non-intervention, or that indeed there is no constitutional right to appointed counsel in such cases. Upon the present showing, however, and upon the basis of the court's present views of the constitutional requirement of counsel, it appears, and the court finds, that should a preliminary injunction not be granted *pendente lite* there is a substantial risk that the plaintiff will suffer irreparable injury through having his parole revoked on the basis of an adjudication of guilt in the misdemeanor case without benefit of counsel and contrary to constitutional requirements; that an injunction *pendente lite,* confined to this particular case in view of its special circumstances, will not substantially interfere with or embarrass state authorities in the prosecution of its criminal laws; and that on the balance of equities and to protect the jurisdiction of this court to grant appropriate relief upon the merits it is reasonably necessary that a preliminary injunction be granted herein against any trial without counsel of the defendant by the respondent judges in the pending case.

■ What has been said hereinbefore about the general rule of non-intervention and the necessity of extraordinary circumstances beyond the ordinary consequences of criminal proceedings to warrant interference with state criminal proceedings disposes of the final problem presently submitted for decision. Plaintiff does not represent, in view of his essential reliance upon special circumstances, the general class of persons charged with misdemeanors punishable by imprisonment of less than six months which has been or is being denied counsel by the State of Utah or its courts; or if he does, it is obvious that the rule of non-intervention bars the granting of injunctive relief to that class as a whole. The class aspects of the present action, therefore, are hereby dismissed and the case will proceed as between plaintiff individually and the named judges of the City Court of Ogden City, Weber County, State of Utah.

The foregoing memorandum decision, being deemed sufficient as findings of fact and conclusions of law pursuant to Rule 52, F.R.Civ.P., counsel for plaintiff is directed to promptly prepare, serve and submit to the court a proposed form of preliminary injunction consistent with the views herein expressed. Approval as to form by counsel for the defendants will not be considered a waiver of any substantive position of the defendants in opposition to the injunction *pendente lite* or on the merits. As soon as the case is at issue and investigation and discovery can be completed concerning the claimed special circumstances, the case will be set down for final hearing on the merits.

## ON SUBMISSION FOR FINAL DECISION

This case has now been submitted for final decision upon a stipulation of facts and briefs on the law. These in my opinion do not throw into further question the analyses and interlocutory rulings set out in my memorandum decision of January 7, 1971, by which there was ordered the entry of a preliminary injunction enjoining the defendants from further proceeding against the plaintiff in the misdemeanor prosecution without affording to him the assistance of counsel.

An introductory restatement of the case here seems unnecessary in view of my previous memorandum. It is necessary, however, to consider the impact of

intervening decisions of the United States Supreme Court, together with the basic problem of the right to counsel in misdemeanor cases. The decisions referred to, all announced on February 23, 1971, seem to confirm in 'principle that this is not a proper three-judge case nor one appropriate for class treatment, and that if relief is to be granted special facts must appear which surmount the "general rule of non-intervention" and establish the existence "of extraordinary circumstances beyond the ordinary consequences of criminal proceedings to warrant interference with state criminal proceedings". Yet they place renewed emphasis upon the doctrine of non-intervention and require a more critical consideration of any special justification for intervention here.

Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), held that the circumstances existing there did not warrant the issuance by a United States District Court of an injunction to stay proceedings pending in a state criminal court as it did not appear from the record that the plaintiffs would suffer immediate and irreparable damage in accord with the rule set out in Douglas v. City of Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943). In Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), the court said that while in particular cases there might be special circumstances of distinction, ordinarily the practical effects of declaratory and injunctive relief will be virtually identical, "and the basic policy against federal interference with pending state criminal prosecutions will be frustrated as much by a declaratory judgment as it would be by an injunction." In Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971), the Supreme Court reversed the order of a district court of three judges suppressing evidence before a state criminal court as an unwarranted interference with state processes, but found that it lacked jurisdiction to review a declaration by the single judge that local ordinances were invalid and returned the case for possible appeal to the Court of Appeals. Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971), determined that a petition for an injunction and declaratory relief against the enforcement of an allegedly unconstitutional state statute by persons against whom state prosecutions had not yet been initiated "fell far short of showing any irreparable injury from threats or actual prosecutions * * *." Dyson v. Stein, 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781 (1971), concluded that federal intervention affecting pending state criminal prosecutions either by injunction or by declaratory judgment is proper only where irreparable injury is threatened, that the existence of such injury is a matter to be determined carefully under the facts of each case, and that since no findings of irreparable injury had been made the judgment of the three-judge district court that the statute on which the prosecution was based was unconstitutional would be vacated and the case remanded for reconsideration in the light of Younger v. Harris and Samuel v. Mackell. Byrne v. Karalexis, 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792 (1971), was an appeal from an order of a three-judge court granting a preliminary injunction against the appellees. Following the filing of state indictments against them appellees brought suit in federal court seeking injunctive relief against both pending and future prosecutions and a declaration that the Massachusetts obscenity law was unconstitutional. Upon a finding that there was a probability of success in having the statute declared unconstitutional, that abstention would be improper, and that appellees might suffer irreparable injury if unable to show the film which was the subject of the state action, the three-judge court, one judge dissenting, granted a preliminary injunction, forbidding the initiation of any future prosecutions or the execution of the sentence imposed in the state proceeding then pending. Karalexis v. Byrne, 306 F.Supp. 1363 (D. Mass. 1969).

In discussing the subject of irreparable injury, the lower court had said:

> "We do not agree with defendant's contention that there is no indication of irreparable injury. Even if money damages could be thought in some cases adequate compensation for delay, this defendant will presumably be immune. We agree with plaintiffs that the box office receipts, if there is a substantial delay, can be expected to be smaller. A moving picture may well be a diminishing asset. It has been said, also, that in assessing injury the chilling effect upon the freedom of expression of others is to be considered. *See* Dombrowski v. Pfister, 1965, 380 U.S. 479, 486–489, 85 S.Ct. 1116, 14 L.Ed.2d 22."

306 F.Supp. at 1367. The Supreme Court observed that there "was, however, no finding by the District Court that the threat to appellee's federally protected rights is 'one that cannot be eliminated by his defense against a single criminal prosecution'", citing Younger v. Harris. "Because the District Court, in considering the propriety of injunctive and declaratory relief in this case, was without the guidance provided today by our decisions in Younger v. Harris, *supra*, and Samuels v. Mackell, *ante*, we vacate the judgment below and remand for reconsideration in light of those decisions."

After carefully considering the facts in light of those decisions it has been concluded that this case does indeed involve the threat of immediate, irreparable injury if the proceedings in the state court are not enjoined; and that such threatened injury can properly be found so great and immediate as to justify a determination, consistent with a proper respect for the prerogatives of the state courts, that under the circumstances continued prosecution of the petitioner without the aid of counsel would unconstitutionally deprive him of the equal protection of the laws, due process, and his constitutional right to counsel.

These facts have been stipulated by the parties and are adopted as findings of the court:

1. Plaintiff James Michael Sweeten is a married man, 30 years of age, residing in Ogden, Utah, with his wife and family.

2. He is alleged to have committed the criminal offense of "exhibiting a deadly weapon in an angry and threatening manner" in Weber County, State of Utah. It is alleged to have occurred on the premises of "McDonald's Hamburgers", 1111 Washington Boulevard, Weber County, Utah, on October 4, 1970, where it is claimed that plaintiff drew or exhibited a gun and angrily threatened with said gun one Michael Roy Chastain. A complaint was authorized by Michael F. Olmstead, Deputy County Attorney for Weber County, which was subscribed by Mr. Chastain and sworn to before the defendant E. F. Ziegler, as a Judge of the City Court of Ogden City, Weber County, State of Utah on October 9, 1970. Plaintiff's arrest and release on bail followed thereafter.

3. The offense with which plaintiff presently stands charged is classified as a misdemeanor by Utah Code Ann. § 76–23–3 (1953), and is made punishable, upon conviction, by imprisonment in a county jail for a term not exceeding six (6) months or by a fine in any sum less than $300, or by both such imprisonment and fine, pursuant to Utah Code Ann. § 76–1–16 (1953).

4. Plaintiff appeared for arraignment before the defendant Judge Ziegler on November 2, 1970, and with Paul D. Vernieu, Esquire, appearing specially for him, orally moved the defendant Judge Ziegler to appoint counsel to represent him at public expense. At this appearance plaintiff also filed with the defendant Judge Ziegler his "Affidavit of Financial Status", in the form required under the Weber County Criminal Defense Program.

5. On November 4, 1970, Judge Ziegler announced in open court his denial

of plaintiff's motion for appointment of counsel notwithstanding the determined indigency of the plaintiff.

6. On December 15, 1961, plaintiff, then known as, and using the name of "James Michael Burrill" was sentenced to imprisonment in the Utah State Prison for concurrent, indeterminate terms of not to exceed five (5) years each, upon adjudications of guilt of the felony crimes of burglary in the third degree and assault with a deadly weapon by the judgments and commitments of the Second Judicial District Court, in and for the County of Weber, State of Utah, in those certain criminal proceedings of said District Court entitled "State of Utah v. James Michael Burrill, Criminal Nos. 6872 & 6896." Plaintiff was incarcerated in the Utah State Prison, pursuant to said concurrent judgments and commitments, from December 16, 1961, to September 10, 1963, at which time he was released on parole. Plaintiff's parole from the aforesaid concurrent sentences was terminated during the month of May, 1966.

7. February 6, 1967, plaintiff was sentenced to imprisonment in the Utah State Prison for an indeterminate term of not less than one nor more than twenty years upon an adjudication of guilt of the felony crime of forgery, by the judgment and commitment of the Second Judicial District Court, in and for the County of Weber, State of Utah, in that certain criminal proceeding of said district court entitled "State of Utah vs. James M. Sweeten, Criminal No. 8369." Plaintiff was incarcerated in the Utah State Prison, pursuant to said judgment and commitment, from February 7, 1967, to September 16, 1969, on which latter date he was released on parole, with approximately seventeen years and five months of said indeterminate term remaining unserved, and that said parole has not been terminated, nor has it expired.

8. Conviction of plaintiff for the misdemeanor offense now pending against him would constitute cause for revocation of plaintiff's present parole status, and that upon revocation plaintiff could thereby be returned to the Utah State Prison for as long as seventeen years and five months.

9. The pending misdemeanor prosecution exposes plaintiff to possible incarceration for a term substantially in excess of six months, notwithstanding that such term of six months imprisonment is the maximum that the defendant judges could impose upon conviction for the misdemeanor.

In addition to the stipulated facts the court further finds as reasonable inferences therefrom and on the basis of matters of which it takes judicial notice:

10. While the Board of Pardons may revoke parole without a prior adjudication of guilt in a court proceeding, it is not likely to do so for claimed offenses involved in a pending court proceeding until that proceeding is concluded; and that while that Board could give consideration to a claim after conviction that the conviction was based upon a deprivation of constitutional rights, it would not be likely to accede to the argument that a misdemeanant was entitled to appointed counsel when the sentence imposed could not exceed six months in view of the ruling of the highest court of the state in Hortencio v. Fillis, 25 Utah 2d 73, 475 P.2d 1011 (1970). The court further finds that even though the Board of Pardons might consider possible constitutional infirmity of a conviction, it could, upon the basis of its own information and investigation, triggered by any state court conviction, however questionable in view of lack of counsel, order revocation of parole notwithstanding. It would thus be difficult, if not impossible, on any subsequent review of constitutional issues to relate any revocation of parole to the deprivation of the right to appointed counsel.

11. The trial court has already made its ruling concerning the right to counsel and therefore plaintiff cannot expect his right to counsel, if he has that right, to be protected before the city court.

12. The court is also mindful, and so finds, that without the intervention of this court, and in view of the decision of the Utah State Supreme Court in *Hortencio, supra,* the petitioner likely would be deprived of counsel not only in the city court proceeding but on any appeal therefrom, and that postponement or avoidance of the problem at this time by this court would only compound the difficulties and uncertainties.

13. The court further finds upon the basis of judicial knowledge that even though in the abstract there may be some question under the state statute whether counsel could be provided by the city court at public expense, that court has the inherent power to call upon members of its bar as officers of the court to extend their aid to indigent defendants under circumstances such as exist in this case or in view of the special circumstances otherwise to provide counsel. *See* Hortencio v. Fillis, 25 Utah 2d 73, 475 P.2d 1011, 1012 (1970).

14. And, finally, the court finds that the threat to plaintiff's constitutionally protected rights is one that cannot be eliminated by his defense to the misdemeanor action, since the city court has already denied him the right he claims; that without assistance of counsel he will be injured further in that he cannot reasonably and advisedly interpose or maintain any defense that he may have to that charge; that without counsel there will be grave danger that he may waive involuntarily his defenses or procedural safeguards; that without counsel there is grave danger that any review of his conviction by other courts may be rendered futile; that if he is denied counsel at this point there is no reason to suppose he will not be denied counsel in any further proceedings or review based on the same charge; and that he faces not only the risk of a fine and imprisonment under the misdemeanor charge without assistance of counsel, but also, as a result thereof, the grave, immediate and irreversible risk of imprisonment for a number of years through parole revocation.

The court concludes upon the basis of equitable principles that if under the circumstances of this case the petitioner has a constitutional right to counsel it is reasonably necessary and proper that that right be declared in these proceedings; and that if it is not so declared and the prosecution of the misdemeanor action against the petitioner without aid of counsel enjoined, the petitioner will suffer great, irreparable and immediate injury.

Beyond what was said in the previous memorandum granting a preliminary injunction, authorities and reasons are almost daily appearing and, no doubt, will continue to come forth in the future concerning the necessity of counsel in misdemeanor cases where substantial prison sentences may be imposed. There is, on the other hand, respectable authority to the contrary, and the Supreme Court has never expressly ruled upon the matter. It has, in fact, refrained from granting certiorari in cases that would furnish appropriate occasion for an authoritative conclusion. It also may be argued that the distinction drawn in federal practice between ordinary misdemeanors and petty offenses with reference to the procedures of handling by magistrates and trial by jury gives support to the "six month" differentiation with reference to right to appointed counsel. A proliferation of reasons and arguments pro and con, however, would tend to mask if not confuse the basic position which this court believes must be taken at length by any civilized and reasonable legal system for ordered liberty in which the services of counsel are as inherent and essential as they are in ours. Furthermore, our Constitution and a national commitment which so highly values human liberty demands such a position.

There simply is no longer any justification or excuse in my opinion for denying counsel to a defendant in a criminal case in the position of this petitioner. Any controlling differentiation between six months and six months and a day cannot be accepted in law or reason. The

principle of *de minimis* which might render practical the enforcement of traffic regulations cannot in this day and age justify trials without counsel where six months, involving some 180 days, or approximately 4320 hours, much less seventeen years, of involuntary incarceration might be imposed.

If this conclusion is not a part of the ground actually reached by the Supreme Court of the United States it now lies well within the next step to which there already has been a committal. *See* Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); Winters v. Beck, 385 U.S. 907, 87 S.Ct. 207, 17 L.Ed.2d 137 (1966) (dissent of Mr. Justice Stewart from denial of certiorari); *cf.* Tate v. Short, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971); Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). *See also* Heryford v. Parker, 396 F.2d 393 (10th Cir. 1968). And with the steps already definitely taken, it would be incongruous and unreasonable, if not impossible, to stop short of this one. *Cf.* La Faver v. Turner, 231 F.Supp. 895, 900 (D. Utah 1964), aff'd, 345 F.2d 519 (10th Cir. 1965).

This case involves a problem of furnishing counsel to one individual under extraordinary facts, and it is upon the basis of these facts and with this particular case in mind that the decision is made. That it also involves a basic principle which if accepted in other cases may create administrative and financial problems neither leads me to shirk my duty to grant relief or to project the case into all manner of practical problems that may be involved in other applications. · Such problems have been overcome in the past and they will be surmounted in this area with increased strength and justice for our judicial system. Paraphrasing Edward Everett Hale—because we cannot do everything, we should not refuse to do the something that we can and should in the case before us. ·

An appropriate order declaring the plaintiff's right to counsel in this pending misdemeanor case and permanently enjoining its further prosecution until plaintiff is accorded his right to the assistance of counsel may be submitted.