**Robert John MORGAN, for himself and for all others similarly situated, Plaintiff-Appellant,**

v.

**Charles A. WOFFORD, as Judge of the Superior Court of Fulton County et al., Defendants-Appellees.**

No. 72–1210.

United States Court of Appeals, Fifth Circuit.

Jan. 29, 1973.

Emily Carssow, Morris Brown, Charles Morgan, Jr., Norman Siegel, Atlanta, Ga., for plaintiff-appellant.

Charles A. Wofford, Atlanta, Ga., Robert J. Castellani, Arthur K. Bolton, Atty. Gen., H. Andrew Owen, Jr., Atlanta, Ga., for defendants-appellees.

Before TUTTLE, BELL and AINSWORTH, Circuit Judges.

TUTTLE, Circuit Judge:

This action attacks the constitutionality of a Georgia statute making monetary restitution to the victim by the convicted perpetrator of a crime a condition of probation.[1] The challenges made are: (1) that the statute as applied by defendants violated the due process clause of the Fourteenth Amendment because no court hearing was held to determine the amount of restitution to be demanded of the probationer, and (2) that the statute on its face violates the equal protection clause of the Fourteenth Amendment because it calls for the revocation of probation for, and incarceration of, indigent defendants who cannot pay the restitution, while non-indigent defendants may avoid incarceration by paying the restitution. The district court dismissed both claims as nonjusticiable, saying that "the record does not indicate that the threat of incarceration was imminent."

The relevant facts are not in dispute. Morgan, the plaintiff-appellant, received a sentence of "five years, $1,000 fine, restitution, and probated" on June 11, 1968, following a plea of guilty to the charge of receiving stolen goods. The sentence was to be probated "on payment of fine $1,000 and restitution if any, on condition defendant not violate the laws of Georgia and [illegible] of the Court." The order of probation signed the same day noted: "Fine of $1,000, restitution of $—— (T.B.D.) both payable through the adult probation office at the rate of $10 weekly until both are paid in full."

According to the testimony of the chief probation officer, the normal practice for probation orders is to leave the judgment open and allow the victim of the crime to certify his losses to the probation office at a later date. In this case, the records of the criminal court clerk's office contain *no order* or *judgment* by the trial court containing any figure for the amount of restitution to be paid by Morgan. Only upon testimony of the probation officer does the record below indicate that the victim's total loss was some $11,000, that the victim recovered about $4,000 in goods, and that his loss "not covered by insurance" was approximately $3,000. In a later *copy* of the "order of probation," apparently filled out as to amount by the probation office, there had been inserted in the blank space of the copy of the original order the figure $7,345.69. Morgan was told at a still later date that he would have to pay $7,000 restitution. None of these figures was ever presented to be considered by or approved by the sentencing judge; the inference in the record is that the probation office filled in the amount without further judicial scrutiny until the events which are discussed below transpired.

1. Georgia Code § 27-2711, listing conditions of probation, says:
 "The court shall determine the terms and conditions of probation and may provide that the probationer shall . . . (7) make reparation or restitution to any aggrieved person for the damage or loss caused by his offense in an amount to be determined by the court, provided, however, that no reparation or restitution to any aggrieved person for the damage or loss caused by his offense shall be made if the amount is in dispute unless the same has been adjudicated."

Morgan, arrested on another charge several months subsequent to the June proceedings, never learned about the amount of restitution determined *by the probation officer* to be owed by him to the victim of the "receiving stolen goods" offence until after he was released from custody and had begun reporting to the probation office. At this time, the probation officer told Morgan he would have to pay $7,000 restitution during the remaining probation period. In order for him to satisfy this requirement, he would have had to make payments of $35.00 per week for the duration of his probation.

When this sum was demanded of him, Morgan went with a public lawyer and the probation officer to the sentencing judge's chambers to complain of the $7,000 figure. Though Judge Wofford remitted the $1,000 fine, he said that the matter of restitution *was closed* and that Morgan had the choice of paying it or going to jail. Subsequent to this hearing, Morgan never met a $35 payment, and the total amount of restitution which he paid up until the filing of this suit is $190. Morgan alleges that he cannot meet the payments ordered because of his indigency, but the record is inconclusive on the question of his actual inability to pay.

When Morgan felt that revocation of his probation was imminent, he obtained assistance of counsel from the American Civil Liberties Union. His new counsel immediately sought another hearing before the sentencing judge, who reiterated that the amount of restitution was *not open to question* and that Morgan would either have to pay or go to jail.

The following statements by Judge Wofford appear from the record of this second hearing:

"Well, this money is going to have to be paid."

"By golly, he's just got to make an effort to pay it or go to jail. Which is it going to be?"

"Son, are you going to pay the money or are you going to jail? You want to pay the money . . . or go to jail and finish up the time and we'll mark it off?"

"I want you to know that I mean exactly what I'm saying. No argument, no nothing. You're going to pay the money and you're going to come in and pay it pleasantly or you're going to jail."

There being no appeal from this hearing, and none being available under Goergia law, so far as has been called to our attention, Morgan filed suit under the Declaratory Judgment Act, 28 U.S. C.A. § 2201,[2] seeking a declaration that the statute requiring restitution was unconstitutional and requesting that defendants be enjoined from enforcing it. A three-judge court was requested in accordance with 28 U.S.C.A. § 2281[3] to deal with the equal protection attack on the statute; the due process challenge to the manner in which the statute was applied was added to the complaint by amendment.

 We deal first with the due process argument. Since the plaintiff claims that Section 27–2711 was applied to him without due process of law, the validity of the statute itself is not drawn into

2. "In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

3. "An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute . . . shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges . . ."

question,[4] and the need for a three-judge panel to review this issue is obviated.

█ The district court's view that "the record does not indicate that the threat of incarceration was imminent" was clearly erroneous. Morgan, to comply with the restitution condition of probation, was ordered to pay $7,000. At two separate hearings, he was threatened by the sentencing judge. On both occasions, he was told that he could not challenge the amount of restitution, so that the only way the threat could have become more imminent would have been if Morgan had waited to be returned to jail. Requiring that he await actual incarceration would not merely be draconian; it would involve irreparable injury to the probationer, see, e.g., Sweeten v. Sneddon, D.Ct.D.Utah N.D., 324 F.Supp. 1094 (1971), and it would effectively nullify the Declaratory Judgment Act. See Wulp v. Corcoran, 454 F.2d 826, 832 (1st Cir. 1972).

█ Only if reasons of comity preclude this court from hearing the probationer's claim on the merits should we require that his potential federal court relief be limited to a habeas corpus petition. Abstention under the doctrine of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1970), was never intended where there is no possible state proceeding through which appellant may raise his constitutional objections to a state proceeding which has already occurred. Younger itself held that, absent bad faith harassment or other extraordinary circumstances, where the issues sought to be resolved in federal court via an injunction may be adjudicated in a pending state court criminal prosecution, the federal court should abstain from issuing such an injunction. While the Fifth Circuit has applied Younger to situations where there is no pending state court prosecution, but only a threatened prosecution, see Thevis v. Seibels, 464 F.2d 613 (1972), we have never intimated that abstention is appropriate where there is no state court prosecution to be interfered with and where the plaintiff seeking relief in federal court has no alternative forum in which to raise his constitutional claim.

██ Morgan's claim that the judgment leaving the amount of restitution blank is void relates exclusively to a state criminal prosecution which has already occurred, not to a pending or threatened prosecution. It is only because the appellant was not informed of the amount of restitution until long after judgment was entered that the amount was not "adjudicated" long ago. Moreover, there is no alternative state procedure by which appellant may vindicate his due process allegation. No appeal was possible from the hearings at which Morgan was told that the amount was not open to question,[5] and there is no indication that the amount of restitution could be raised at a subsequent probation revocation hearing, particularly since such a revocation hearing would be before the same judge who has refused twice already to reconsider the amount.

Fuentes v. Shevin, 407 U.S. 67, 92 S. Ct. 1983, 32 L.Ed.2d 556 (1971) is compelling precedent for the proposition that abstention is completely inappropriate here. In Fuentes, plaintiffs were granted declaratory and injunctive relief where they challenged "only the summary extra-judicial process of prejudgment seizure of property to which they had already been subjected." 407 U.S. 71, fn. 3, 92 S.Ct. 1989. Morgan similarly chal-

---

4. On its face, the statute appears to require "adjudication" of the amount of restitution whenever that amount is "in dispute." See fn. 1, supra. Though the Georgia courts have held an adjudication to be unnecessary when the amount is not in dispute, see O'Quinn v. State, 121 Ga.App. 231, 173 S.E.2d 409 (1970), we need not base our decision on the premise that court interpretations of the statute have negated its plain meaning. We need not interpret, therefore, the defendant's acts either as conforming to or not conforming to Georgia's statute.

5. An order of revocation of parole is not an appealable order under the Georgia State decisions. See Watts v. State, 36 Ga.App. 215, 136 S.E. 323.

lenges a summary extra-judicial process; the procedure by which the probation office fills in the amount of restitution with no judicial scrutiny of or adversary challenge to, the amount of restitution claimed. While no "prejudgment seizure" takes place under Section 27–2711, appellant is under a purported order to pay $7,000. Like Mrs. Fuentes, Morgan has already been subjected to the process he deems to be unconstitutional, i.e., the extra-judicial assessment of restitution.

Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1970) and *Fuentes*, supra, both illustrate that the process afforded appellant here does not pass muster under the due process clause of the Fourteenth Amendment. In *Bell*, the Supreme Court held that, except in cases of emergency (which this is not), "due process requires that when a State seeks to terminate an interest such as that here involved, it must afford 'notice and opportunity for hearing appropriate to the nature of the case' *before* the termination becomes effective." 402 U.S. at 542, 91 S.Ct. at 1591. A driver's license essential to continuation of appellant's work was the interest involved in *Bell*. However, the Court has subsequently emphasized that its decisions requiring prior notice and hearing, e. g. Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) and Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, (1970) have "little or nothing to do with the absolute 'necessities' of life" but establish "that due process requires as opportunity for a hearing before a deprivation of property takes effect." 407 U.S. at 88, 92 S.Ct. at 1998. Notwithstanding that the household articles seized in *Fuentes* were not essential and that the deprivation was only temporary, the Court held that prior notice and a hearing were necessary.

■ *A fortiori*, prior notice and an opportunity to be heard are prerequisite where $7,000 is ordered by a court of law to be paid out of appellant's weekly salary and the penalty for failure to pay is imprisonment. Especially when criminal sanctions may be involved, we have always been careful to surround the procedures through which the state may deprive a defendant of freedom with safeguards against possible miscarriages of justice. Few procedures, we think, are more likely to encourage such miscarriages than this one; a unilateral statement taken from one party that another party owes him money is accepted as a true and enforceable obligation, and that other party is never allowed to challenge the accuracy of the amount claimed. Therefore, finding that due process has been violated by the sentencing judge and the probation office, we reverse the judgment of the district court and remand that part of the case to that court with directions that it vacate the purported order compelling Morgan to pay $7,000 restitution. Of course, our determination that the present judgment of restitution is invalid does not prevent the state from causing such adversary hearing as is required by the Georgia statute in order to determine "by adjudication" what amount of restitution may be required.

■ Having resolved this appeal on the merits of the due process argument, we do not reach the merits of the equal protection claim. In addition to the possibility that our disposition on due process grounds may afford appellant sufficient relief to preclude the necessity for such further proceedings, we find that the record below is not sufficiently clear to enable us to decide whether or not incarceration was imminent because of appellant's indigency.[6] While a three-judge panel might upon further hearings find (a) that incarceration was im-

---

6. If appellant was able to pay restitution but refused to do so, his position for equal protection purposes would be quite different than if he was unable to pay be-

cause of indigency. See Tate v. Short, 401 U.S. 395 at 400–401, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971).

minent because payment was beyond Morgan's control, (b) that Younger v. Harris presents no bar to the equal protection claim, and (c) that this claim likewise is meritorious, such questions are beyond our jurisdiction to determine as an appellate tribunal.[7] However, because we think that the trial court's ambiguous holding that both issues were not justiciable should not prejudice an attempt to raise the question we cannot reach, we require that the part of the order below finding this question not justiciable be remanded for further proceedings in order that the trial court may seek the appointment of a three judge court.

Reversed in part and remanded.

BELL, Circuit Judge (specially concurring):

The due process question discussed in Judge Tuttle's opinion was not adjudicated by the district court. Appellant contended in the district court that he had disputed the amount ordered paid as restitution but the focus was on the equal protection question—that he could not make the weekly restitution payments and would be incarcerated as the result thereof. The due process question was presented in an amended complaint.

The state answered the due process question with proof that the amount of restitution was set by the probation department after investigation but that under the statute, Ga.Code § 27–2711,[1] there would be an adjudication by the sentencing judge in case the amount was disputed. It was the state's position that appellant had never disputed the amount.

Three pertinent facts appear from the record of the state proceeding before the state sentencing court for relief from the weekly payments, and from the federal court record. First, although appellant did not request such relief, the state court made it plain that there would be no adjudication of the amount due as restitution. The lack of adjudication where the amount is contested is flatly in the face of the statute, Ga.Code § 27–2711. Cf. O'Quinn v. State, 123 Ga. App. 231, 173 S.E.2d 409 (1970).

Second, the amount due by way of restitution was unknown at the time of sentencing, the amount having been supplied later by the probation department of the court. Third, appellant contested the amount due in that he was not responsible or was only one of several persons responsible for stolen goods which had not been recovered.

On remand the district court should first determine whether appellant is disputing the amount due. If so, appellant should be required to make a prima facie case that the amount is incorrect. Once the prima facie case is made, a denial of due process would appear under the circumstances presented to date. The district court should then grant relief to appellant conditioned on the state granting due process to appellant in the determination of the amount due as restitution.

The facial attack on Georgia Code § 27–2711, unless wholly insubstantial, presents a question for a three-judge district court and was not considered by the district court. Nor did the district court reach the equal protection question arising from the proof of indigency. The district court avoided these questions on the ground that it did not appear that incarceration was imminent. It does appear that this conclusion of the court was incorrect. The probation supervisor made it clear in his testimony in the district court that appellant would be incarcerated for refusing to carry out the order of the court to pay and this regardless of his ability to pay. The sentencing court had conducted a hearing on ability and had required the specified weekly payment. It appears, how-

---

7. Because the equal protection attack is upon the fact of Georgia Code § 27–2711, a three judge panel is required to hear it.

See fn. 3, supra. Appeal in such case is, of course, to the Supreme Court.

1. Fn. 1, Judge Tuttle's opinion.

ever, that conditions changed thereafter in that appellant did not have steady employment. It is not clear just what the procedure would have been for appellant to be relieved due to the change in earnings.

The due process and equal protection questions are matters for reconsideration on remand. In formulating relief the district court should consider whether the questions presented are so analogous to habeas corpus relief as to require exhaustion of state remedies. See Jones v. Decker, 5 Cir., 1970, 436 F.2d 954; Johnson v. Walker, 5 Cir., 1963, 317 F.2d 418.

In sum, as modified, the result reached here is in accord with that reached in Judge Tuttle's opinion.