Robert PUGH and Nathaniel Henderson, on their own behalf and on behalf of all others similarly situated, Plaintiffs-Appellees,

Thomas Turner and Gary Faulk, on their own behalf and on behalf of all others similarly situated, Plaintiffs-Intervenors,

v.

James RAINWATER et al., Defendants-Appellants.

No. 72–1585.

United States Court of Appeals, Fifth Circuit.

Aug. 15, 1973.

Certiorari Granted Dec. 3, 1973.
See 94 S.Ct. 567.

Certiorari Denied Dec. 3, 1973.
See 94 S.Ct. 595.

Lewis Jepeway, Jr., Peter L. Nimkoff, Miami, Fla., amicus curiae for Dade County Bar Assn.

Before JOHN R. BROWN, Chief Judge, and TUTTLE and INGRAHAM, Circuit Judges.

TUTTLE, Circuit Judge:

We review here a District Court's holding that each Dade County, Florida arrestee held for trial upon an information filed by the state attorney is entitled by the Fourth and Fourteenth Amendments to an expeditious hearing before a judicial officer on the question of probable cause for arrest.[1] To implement this holding, the court later adopted a plan submitted by Sheriff E. Wilson Purdy (hereinafter the Purdy Plan), which required, *inter alia*, that persons arrested with or without warrants in Dade County, be accorded expeditious preliminary hearings before a magistrate and that those not accorded such hearings be released immediately.[2] Implementation of the Purdy Plan was stayed by this court's order of March 31, 1972, pending appeal, during which time Dade County's judiciary moved voluntarily to establish its own plan for providing preliminary hearings. Following oral argument, on October 18, 1972, we vacated the stay order, directed the District Court to make specific findings on the constitutional deficiencies, if any, of the then-current preliminary hearings practices, and authorized implementation of the Purdy Plan.

On December 6, 1972, the Florida Supreme Court issued its Amended Rules of Criminal Procedure. These rules, which took effect February 1, 1973, provide for a committing magistrate system. The differences between the Purdy Plan and these Amended Rules provided the focus for the District Court's findings pursuant to our order, which were filed on March 12, 1973.

In light of the aforementioned intervening developments, we must resolve

Leonard R. Mellon, Asst. State Atty., Barry Richard, Asst. Atty. Gen., Miami, Fla., for defendants-appellants.

Bruce Rogow, Miami, Fla., for Pugh & Henderson.

Phillip A. Hubbart, Public Defender of Dade Co., Miami, Fla., for Pugh.

1. Pugh v. Rainwater, 332 F.Supp. 1107 (S.D.Fla.1971).

2. Pugh v. Rainwater, 336 F.Supp. 490 (S.D.Fla.1972).

the following questions: (1) Should the District Court have abstained from ruling on the constitutionality of Dade County's lack of preliminary hearings in cases proceeded upon by information filed by the state attorney? (2) Do arrestees prosecuted upon informations certifying probable cause for arrest by the state attorney have a constitutional right to preliminary hearings before a magistrate? and (3) In what respects, if any, are the Amended Rules constitutionally deficient in their provisions for preliminary hearings?

## I. Background

Persons arrested for felonies and most misdemeanors in Dade County, Florida are routinely brought to the Metropolitan Dade County Jail. Aside from capital cases, which must be tried on indictment by a grand jury, all other criminal cases in Florida may be commenced by "information filed by the prosecuting attorney under oath." Florida Statutes § 904.01. Although preliminary hearings on probable cause for arrest with or without warrant are mandated by statute,[3] the Florida judiciary has consistently held that such hearings are not required where the state prosecutes by filing an information certifying probable cause for arrest.[4] Though the Florida Supreme Court has not been insensitive to the constitutional ramifications of incarceration without any preliminary probable cause hearing, it has declined to hold these practices unconstitutional or to fashion relief for arrestees held upon informations.[5] Amended Rule 3.-131, 33 F.S.A., which provides for a right to a preliminary hearing on any felony charge *"unless charged in an information* or indictment," (Emphasis added), preserves the previous practice of permitting the state attorney's certification to obviate the need for a preliminary hearing.

Criminal actions in Dade County, therefore, often proceed upon information sworn to by the state attorney either before or after arrest without any judicial scrutiny prior to arraignment.[6] If unable or unwilling to post bail, arrestees remain in jail at least until arraignment. This incarceration may last as long as 30 days,[7] and at least three

3. F.S. § 901.06. "Duty of officer after arresting with warrant.—When the arrest by virtue of a warrant occurs in the county where the alleged offense was committed and where the warrant was issued, the *officer making the arrest shall without unnecessary delay take the person arrested before a magistrate* who issued the warrant or, if that magistrate is absent or unable to act, before the nearest or most accessible magistrate in the same county."
F.S. § 901.23. "Duty of officer after arrest without warrant.—An *officer who has arrested a person without a warrant, shall without unnecessary delay take the person arrested before* the nearest or most accessible *magistrate* in the county in which the arrest occurs, having jurisdiction and shall make before the magistrate a complaint, which shall set forth the facts showing the offense for which the person was arrested; or, if that magistrate is absent or unable to act, before the nearest or most accessible magistrate in the same county." (Emphasis added).

4. Bradley v. State, 265 So.2d 532 (Fla.App. 1972), cert. denied, 411 U.S. 916, 93 S.Ct. 1543, 36 L.Ed.2d 307; Anderson v. State,

241 So.2d 390 (Fla.1970); Sangaree v. Hamlin, 235 So.2d 729 (Fla.1970); State v. Hernandez, 217 So.2d 109 (Fla.1968); Palmieri v. State, 198 So.2d 633 (Fla.1967); Montgomery v. State, 176 So.2d 331 (Fla. 1965); Baugus v. State, 141 So.2d 264 (Fla.1962).

5. State ex rel. Carty v. Purdy, 240 So.2d 480 (Fla.1970); Milton v. Cochran, 147 So. 2d 137 (Fla.1962).

6. F.S. § 908.01. "Arraignment of defendant; how made.—When an indictment has been found or an information filed against a person he shall before he is put on trial for the offense charged, be arraigned by having the charge stated to him by the prosecuting attorney in open court and by being called upon to plead thereto. If the defendant so demands before he pleads, the indictment or information shall be read to him by the prosecuting attorney. An entry of the arraignment shall be made of record."

7. The district court found:
"The state attorney, between January 1, 1970, and March 31, 1971, decided *not* to file direct informations in 1,165 cases in which a person had been charged or ar-

days must pass before an information is filed against an arrestee and the case is calendared. During this period, the defendant sees no judicial officer other than the bail judge. Arraignment is the first opportunity for a magistrate to inspect the state attorney's information setting forth the cause upon which the defendant was arrested.[8]

The plaintiffs in this action, charged with various offenses under Florida law,[9] filed a class action in the federal court on behalf of themselves and all other Dade County arrestees detained solely upon direct informations in which the state attorney certified probable cause for arrest and detention. They alleged that their pre-trial detention was in violation of the Constitution, and sought declaratory and injunctive relief entitling them to preliminary hearings.

## II. Abstention

■ Fully cognizant that "A federal lawsuit to stop a prosecution in a state court is a serious matter." Younger v. Harris, 401 U.S. 37 at 42, 91 S.Ct. 746 at 749, 27 L.Ed.2d 669 (1971), we nevertheless find that the plaintiffs' claim is not barred by considerations of federal-state comity.

This suit, a class action by arrestees contesting the quality of their present detention pending trial, sought no relief which would impede pending or future prosecutions on various charges in the state courts of Florida. Rather, while accepting that the state courts were the proper forum for consummation of criminal proceedings against them, the plaintiffs argued that the State was nevertheless obligated to submit them to preliminary probable cause hearings.

■ This court has declined to issue declaratory or injunctive relief interfering with pending or future state court prosecutions, Becker v. Thompson, 459 F.2d 919 (5 Cir. 1972), cert. granted, sub nom Steffel v. Thompson, 410 U.S. 593, 93 S.Ct. 1424, 35 L.Ed.2d 686 (1973), unless the state statute under which the plaintiffs were being prosecuted was allegedly unconstitutional on its face, Jones v. Wade and Dyson, 479 F.2d 1176, 5 Cir., decided May 30, 1973. However, we have not declined to adjudicate federal questions properly presented merely because resolution of these questions would affect state procedures for handling criminal cases. Where, as here, the relief sought is not "against any pending or future court proceedings as such." Fuentes v. Shevin, 407 U.S. 67,

rested as a result of police investigation. The majority of these 'no actions' resulted from arrests on charges lacking sufficient evidence to justify the filing of an information." 332 F.Supp. at 1110.

Moreover, nearly one-fifth of the total number of cases disposed of by the state attorney in 1970 (1,565 out of 7,856) were acquittals. The court noted that the average delay period of ten to fifteen days between arrest and arraignment caused incarceration of many defendants subsequently acquitted and unnecessary expenditure of tax dollars to maintain Dade County's jails. The practical effect of prompt judicial probable cause hearings the court surmised, would be a lessening of both human misery and the tax burden because a judge's finding of no probable cause would cause dismissal of spurious prosecutions forthwith.

8. For purposes of this appeal, we assume that because Florida Statutes § 906.06 requires the state attorney to state the of-

fense on the information form and § 906.07 says that "the court, on motion, may order the prosecuting attorney to furnish a bill of particulars," the defendant could challenge the information for failure to show sufficient probable cause upon which to continue the prosecution. Otherwise, the trial itself would present the first such opportunity for a probable cause challenge before a judicial officer. While bail hearings apparently are afforded even where the state prosecutes by information, there is no showing on this record that these hearings have ever been utilized to require the State Attorney to show probable cause for arresting as well as the reasons for setting bail at a particular level or for denying bail altogether.

9. Plaintif Robert Pugh was charged with robbery, a felony which was and is punishable by life imprisonment under Florida law. Plaintiff Nathaniel Henderson was charged with assault and battery, a misdemeanor under Florida law.

71, n. 3, 92 S.Ct. 1983, 1989, n. 3, 32 L. Ed.2d 556, n. 3, (1971), (Emphasis added), *Younger* is inapplicable.

The relief sought by these plaintiffs was not against any state prosecution *as such* but only against the state's practice of considering the state attorney a sufficient judge of probable cause to hold arrestees until arraignment or trial. Simply declaring that the plaintiffs were entitled to pre-trial procedural rights, the District Court said that the plaintiffs should "immediately be given a preliminary hearing to determine probable cause by a committing magistrate *unless their cases have been otherwise concluded.*" 332 F.Supp. at 1115, (Emphasis added). By recognizing that some plaintiffs' cases might have been concluded, the Court demonstrated that its declaration of pre-trial rights was not to impede the plaintiffs' prosecutions.

 Not every unconstitutional pre-trial procedure, of course, will entitle a state court defendant to relief in federal court. For example, an uncomstitutional search and seizure does not entitle the state court defendant to any injunction, but only to have the evidence excluded when presented in state court. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). On the other hand, when a plaintiff who happens also to be a defendant in a simultaneous state court proceeding seeks to challenge an aspect of the criminal justice system which adversely affects him but which *cannot* be vindicated in the state court trial, comity is no bar to his challenge.

If these plaintiffs were barred by *Younger* from this forum, what relief might they obtain in their state court trials? Since their pre-trial incarceration would have ended as of the time of trial, no remedy would exist. Their claims to pre-trial preliminary hearings would be mooted by conviction or exoneration.

Plaintiffs' due process claim is closely analogous to that made in Morgan v. Wofford, 472 F.2d 822 (5th Cir. 1972).

In *Morgan*, we held that *Younger* did not bar a claim by a probationer who had been afforded no hearing to ascertain the amount of restitution he owed the victim of his crime. We said:

"Abstention under the doctrine of Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746, 27 L.Ed.2d 669 (1970) was never intended where there is no possible state proceeding through which appellant may raise his constitutional objections to a state proceeding which has already occurred . . . . we have never intimated that abstention is appropriate where there is no state court prosecution to be interfered with and where the plaintiff seeking relief in federal court has no alternative forum in which to raise his constitutional claim." Id. at 826.

In *Morgan*, the plaintiff had already been subjected to the process which we held was unconstitutional. Had these plaintiffs waited until their state criminal trials to raise their due process objections, they would have already served their periods of pre-trial detention and would be barred from any relief. *Infra*, pp. 16–17.

While the plaintiffs might have filed suit in state court for a declaratory judgment and other equitable relief based upon the same grounds as this suit, this procedure would have required a second state court proceeding to adjudicate a federal claim not based upon the merits of the defenses to the state criminal actions. *Younger* has never been applied by our circuit to force a federal court to relinquish jurisdiction over a federal claim which could not be adjudicated in a *single* pending or future state proceeding, and we decline to so apply it now.

Having held that reasons of comity do not bar this suit we need not decide whether this situation comprises an exception to *Younger*. While *Younger* said abstention is inappropriate when "great and immediate irreparable injury is threatened". Id. 401 U.S. at 46, 91 S. Ct. at 749, and even temporary unconsti-

tutional deprivations of liberty may be such injuries, Sweeton v. Sneddon, 324 F.Supp. 1094 (1971), Morgan v. Wofford, *supra*, 472 F.2d at 826, we need not decide whether incarceration without a preliminary hearing is an injury requiring federal intervention where *Younger* would otherwise bar our jurisdiction. Also, we need not decide whether Florida's state court decisions, cited *supra*, so clearly show that under no circumstances will the state courts accord a constitutional right to a preliminary hearing that it would have been futile to require petitioners to seek redress in the state court system.

### III. Probable Cause Hearings

The central issue in this case is whether the Fourth [10] and Fourteenth [11] Amendments require that arrestees held for trial upon informations filed by the state attorney must be afforded preliminary hearings before a judicial officer without unnecessary delay.[12] More precisely, in the face of our numerous decisions holding that lack of such preliminary hearings will not vitiate a conviction,[13] are the plaintiff arrestees, nonetheless, entitled to a judgment declaring that due process necessitates a probable cause preliminary hearing before a magistrate when the state attorney prosecutes presently-confined arrestees by filing an information?

In Hurtado v. California, 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1884), the Supreme Court rejected the proposition that due process under the Four-

teenth Amendment requires state criminal prosecutions to be initiated via grand jury indictment. It said:

> "We are unable to say that the substitution for a presentment or indictment by a grand jury of the proceeding by information, *after examination and commitment by a magistrate, certifying to the probable guilt of the defendant*, with the right on his part to the aid of counsel, and to the cross-examination of the witnesses produced for the prosecution, is not due process of law." Id. at 538, 4 S.Ct. at 122. (Emphasis added.)

Since the lack of independent judicial determination of probable cause under the Dade County information system is precisely the infirmity alleged by the appellees, *Hurtado* is of relevance only because it is the cornerstone on which later decisions were built.

Lem Woon v. Oregon, 229 U.S. 586, 33 S.Ct. 783, 57 L.Ed. 1340 (1913) extended *Hurtado*, allowing the state to proceed by information where

> "The constitution and laws of Oregon . . . did not require any examination, or commitment by a magistrate, as a condition precedent to the institution of a prosecution by an information filed by the district attorney, nor require any verification other than his official oath." Id. at 587, 33 S.Ct. at 783.

The Court refused to distinguish *Hurtado* on the ground that Oregon had not required the information to be *preceded* by a magistrate's preliminary examina-

10. "The right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated . . . ."

11. ". . . nor shall any State deprive any person of life, liberty, or property, without due process of law . . . ."

12. Pre-arraignment incarceration may be subdivided into two classes: those who are eventually proceeded against by the state, either by information or indictment, and those who are released upon a finding by the state attorney that insufficient evidence for continuation of the prosecution exists.

Though the class of plaintiffs here includes only those against whom the state attorney proceeds by information, we do not lightly dismiss the detention of a minimum of 1,165 defendants against whom charges are subsequently dropped. As a practical matter, the relief granted by the district court, by affording probable cause hearings after arrest to all arrestees, benefits also those against whom charges are not pressed.

13. See, e. g. Buchannon v. Wainwright, 474 F.2d 1006 (5th Cir. 1973); Jackson v. Smith, 435 F.2d 1284 (5th Cir. 1970); Scarbrough v. Dutton, 393 F.2d 6 (5th Cir. 1968).

tion and said that the opportunity for a judicial examination *"prior to* the formal accusation by the district attorney" Id. at 590, 33 S.Ct. at 784. (Emphasis added), is not obligatory upon the states. Whether or not it is reasonable to infer that there is also no necessity for a *subsequent* judicial finding of probable cause without unnecessary delay is the precise issue in this case.

In Ocampo v. United States, 234 U.S. 91, 34 S.Ct. 712, 58 L.Ed. 1231 (1914), the defendants had moved to vacate an order of arrest upon the ground that it was made

> "without any tribunal magistrate, or other competent authority *having first* determined that the alleged crime had been committed, and that there was probable cause to believe the defendants guilty of it." Id. at 93, 34 S.Ct. at 713 (Emphasis added).

Though *Ocampo* decided the narrow issue of the necessity for investigation by a judicial officer *before arrest*, this dictum is broad enough to encompass the instant situation:[14]

> "It is insisted that the finding of probable cause is a judicial act,' and cannot properly be delegated to a prosecuting attorney. We think, however, that it is erroneous to regard this function, as performed by committing magistrates generally . . . as being judicial in the proper sense. There is no definate adjudication. A finding that there is no probable cause is not equivalent to an acquittal, but only entitles the accused to his liberty for the present, leaving him subject to rearrest . . . since . . . the same act . . . does not prescribe how 'probable cause' shall be determined, it is, in our opinion, as permissible for the local legislature to confide this duty to a prosecuting officer as to entrust it to a justice of the peace." Id. at 100–101, 34 S.Ct. at 715–716.

There is a significant difference between the *Hurtado, Lem Woon,* and *Ocampo* decisions and our case. Probable cause hearings *prior* to arrest place a heavy burden upon the State. *After* arrest, but before arraignment, an entirely different situation prevails. Where the State already has the defendant in custody it is not in jeopardy of losing him before a magistrate can rule on probable cause. It is only prejudiced if the magistrate finds there was no probable cause for believing the defendant committed the crime, in which case the prosecution ought not to proceed anyway. We therefore face squarely the plaintiffs' contention that Florida's denial of a probable cause hearing after arrest but before arraignment is constitutionally impermissible because the prosecuting attorney who certifies the existence or non-existence of probable cause, is not sufficiently detached to make this decision.

In McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1942), after pointing out that "legislation, requiring that arrested persons be promptly taken before a committing authority, appears on the statute books of nearly all the states," Id. at 342, 63 S.Ct. at 614, the Court said that:

> "The purpose of this impressively pervasive requirement of criminal procedure is plain. A democratic society, in which respect for the dignity of all men is central, naturally guards against the misuse of the law enforcement process. Zeal in tracking down crime is not in itself an assurance of soberness of judgment. Disinterestedness in law enforcement does not alone prevent disregard of cherished liberties. Experience has therefore counseled that safeguards must be provided against the dangers of the overzealous as well as the despotic. The awful instruments of the criminal law cannot be entrusted to a single

14. Beck v. Washington, 369 U.S. 541, 82 S. Ct. 955, 8 L.Ed.2d 98 (1962), which notes that since *Hurtado* prosecutions have often proceeded on informations filed by prosecutors without prior probable cause hearings, adds nothing to *Ocampo*.

functionary. The complicated process of criminal justice is therefore divided into different parts, responsibility for which is separately vested in the various participants upon whom the criminal law relies for its vindication. *Legislation such as this, requiring that the police must with reasonable promptness show legal cause for detaining arrested persons, constitutes an important safeguard*—not only in assuring protection for the innocent but also in securing conviction of the guilty by methods that commend themselves to a progressive and self-confident society." Id. at 343–344, 63 S.Ct. at 614. (Emphasis added).

Recently, the Supreme Court has held on several occasions that judicial detachment was constitutionally mandated. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1970), held that the Fourth Amendment requires a neutral and detached magistrate to authorize the search and seizure of property by the police. Though New Hampshire argued that the Attorney General, who was authorized to issue warrants under state law, did in fact act as a neutral and detached magistrate, the Court responded:

" . . . there could hardly be a more appropriate setting than this for a *per se* rule of disqualification rather than a case-by-case evaluation of all the circumstances. Without disrespect to the state law enforcement agent here involved, the whole point of the basic rule . . . is that prosecutors and policemen simply cannot be asked to maintain the requisite neutrality with regard to their own investigations—the 'competitive enterprise' that must rightly engage their single-minded attention." Id. at 450, 91 S.Ct. at 2029.

In summary, the Court added:

"We find no escape from the conclusion that the seizure and search . . . cannot constitutionally rest upon the warrant issued by the state official who was the chief investigator and prosecutor in this case. Since he was not the neutral and detached magistrate required by the Constitution, the search stands on no firmer ground than if there had been no warrant at all." Id. at 453, 91 S.Ct. at 2031.

The Fourth Amendment's prohibition against warrantless searches and seizures has been applied in two arrest situations closely analogous to the one at bar. Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1971), required that a parolee, after arrest, could be returned to custody for violation of parole conditions only after a hearing on probable cause before someone not directly involved. The Court emphasized that

" . . . due process would seem to require that some minimal inquiry be conducted at or reasonably near the place of the alleged parole violation or arrest and as promptly as convenient after arrest while information is fresh and sources are available. Cf. Hyser v. Reed, 115 U.S.App.D.C. 254, 318 F. 2d 225 (1963). Such an inquiry should be seen as in the nature of a 'preliminary hearing' to determine whether there is probable cause or reasonable ground to believe that the arrested parolee has committed acts that would constitute a violation of parole conditions. Cf. Goldberg v. Kelly, 397 U.S. [254], at 267–271 [90 S.Ct. 1011, at 1020–1022, 25 L.Ed.2d 287].

"In our view, due proces requires that after the arrest, the determination that reasonable ground exists for revocation of parole should be made by someone not directly involved in the case" Id. at 485, 92 S.Ct. at 2602.

In Shadwick v. Tampa, 407 U.S. 345, 92 S.Ct. 2119, 32 L.Ed.2d 783 (1971), the city authorized the issuance of arrest warrants by clerks of the Municipal Court. The petitioner challenged these warrants on the ground that the clerks were not neutral and detached magistrates for purposes of the Fourth Amendment as incorporated into the due

process clause of the Fourteenth Amendment. The Court, accepting the proposition that the Constitution mandates that arrest warrants be issued only by "judicial officers" or "magistrates," proceeded to hold that the clerks were judicial officers. In so holding, the Court explained:

> "The warrant traditionally has represented an independent assurance that a search and *arrest will not proceed without probable cause to believe that a crime has been committed and that the person or place named in the warrant is involved in the crime. Thus, an issuing magistrate must meet two tests. He must be neutral and detached, and he must be capable of determining whether probable cause exists for the requested arrest* or search. This Court long has insisted that inferences of probable cause be drawn by 'a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.' Johnson v. United States, *supra,* [10] at [13–] 14 [of 333 U.S. 367 at 369 of 68 S.Ct., 92 L.Ed. 436]; Giordenello v. United States, *supra,* [480] at 486 [of 357 U.S. 1245 at 1250 of 78 S.Ct., 2 L.Ed.2d 1503]. In Coolidge v. New Hampshire, *supra,* the Court last Term voided a search warrant issued by the state attorney general 'who was actively in charge of the investigation and later was to be chief prosecutor at the trial.' Id., at 450 [of 403 U.S., at 2029 of 91 S.Ct.]. If, on the other hand, detachment and capacity do conjoin, the magistrate has satisfied the Fourth Amendment's purpose." Id. at 350, 92 S.Ct., at 2122 (Emphasis added).

*Morrissey* and *Shadwick* illustrate that probable cause for arrests may not always be determined by a prosecuting attorney, notwithstanding the dictum of *Ocampo*. Magistrates or other officials having the detachment of magistrates have been required to find probable cause for returning a parolee to custody and for issuing arrest warrants. Must

such detachment be present in a hearing of probable cause where the state holds an arrestee upon an information sworn to by the state attorney? Because this Court has said that an arrestee proceeded against by information has no constitutional right to a preliminary hearing, Buchannon v. Wainwright, *supra*; Jackson v. Smith, *supra*; Scarbrough v. Dutton, *supra,* we turn now to these decisions.

The opinion of the trial court thoroughly explores the dispositive distinction between the instant case and prior decisions discounting the existence of a due process right to a preliminary hearing:

> "Numerous opinions have been cited in which this circuit has held there is no due process right to a preliminary hearing. The issue in each of those cases however, was the validity of the trial as affected by the absence of a preliminary hearing and not the validity of the pre-trial detention itself. In Scarbrough v. Dutton, 393 F.2d 6 (5th Cir. 1968), the Court, upholding a conviction where the defendant had been incarcerated for seven months without a preliminary hearing, stated, 'The failure to hold a preliminary hearing, without more, does not amount to a violation of constitutional rights which would vitiate the subsequent conviction.' 393 F.2d at 7 (Emphasis added). See also: Murphy v. Beto, 416 F.2d 98 (5 Cir. 1969); McCoy v. Wainwright, 396 F.2d 818 (5 Cir. 1968); King v. Wainwright, 368 F.2d 57 (5 Cir. 1966); Worts v. Dutton, 395 F.2d 241 (5 Cir. 1968); Kerr v. Dutton, 393 F.2d 79 (5 Cir. 1968); *cf.* Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961).
>
> "In Anderson v. Nosser, 438 F.2d 183 (5 Cir. 1971), even though the Court did not consider the validity of a conviction, the facts were analogous to those in the foregoing post-conviction cases. In each case cited supra the pre-trial detention had ceased to exist, and the trial itself being valid, there

was no continuing deprivation of rights. The confinement in *Anderson* occurred over a period of two to four days with the various federal complaints being filed from three months to fourteen months after plaintiffs' release. Consequently, in *Anderson*, just as in the post conviction cases the Court was asked to grant relief from a deprivation of rights no longer in effect. That the *Anderson* Court itself considered the case to come within the post conviction situation is apparent from its reliance upon Kulyk v. United States, 414 F.2d 139 (5 Cir. 1969), and other cases, all of which turned upon the validity of a conviction, 438 F.2d at 196.

"The instant case differs from the foregoing in that this Court is asked to determine the validity of a present confinement. The complaint herein was filed during plaintiffs' incarceration. Unlike *Anderson*, the confinement at bar is not an isolated event but is a recurring part of the State sanctioned prosecutorial system. Unless corrected the wrong complained of will continue to infringe upon the rights of the individual plaintiffs and the class they represent." 322 F. Supp. at 1112–1113.

The distinction between a pre-trial declaration of a right to a hearing and a post-conviction appeal for reversal on the basis of the absence of such hearing is a pragmatic and sensible distinction. Moreover, it is simple in its application, as Richardson v. Gerstein, 336 F.Supp. 67 (1972), illustrates. In *Richardson*, the same district court which granted relief in this case refused to grant relief to plaintiffs who had been validly convicted and were seeking to shorten their sentences, rather than to question the quality of their pre-trial detention.

While a magistrate might well arrive at the same decision as to probable cause as the state attorney, we hold that due process abhors even the appearance of such entanglement between the prosecutorial and judicial functions as exists under the Florida information prosecution system. Incarceration of an untried defendant for up to a month without any scrutiny by a judicial officer of the basis for this incarceration is far more odious to a sense of justice than the temporary deprivation of property without a hearing. Yet the Supreme Court has repeatedly held that such deprivations of property are impermissible. Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1971); Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L. Ed.2d 349 (1969).

This practice may substantially prejudice defendants in preparation of their cases and result in the incarceration of defendants against whom the State dismisses charges. No countervailing state interest is fulfilled by such deprivation for, as the District Court predicted in its opinion,

"[t]he expense of maintaining a jail, with many persons who would never be there in the first instance if their cases had been reviewed by a judge in an effective committing magistrate system, will be substantially less than its present cost and will certainly be a tangible benefit to all citizens of this community." 332 F.Supp. at 1114.

In the intervening months between issuance of our order vacating the stay of the interim panel of this court and the District Court's findings as to the interim practices followed, evidence has accumulated which fully supports this prediction. Judge Tanksley, Chief Judge of the Magistrate Division of Florida's Eleventh Judicial Circuit, for example, estimated that, as a result of the magistrate system, felony caseloads have been reduced by 20 to 25 percent, with corresponding savings to the taxpayers of Dade County.

■ We therefore affirm the judgment of the district court requiring the State of Florida to immediately give the plaintiffs a preliminary hearing to determine probable cause for their arrests unless their cases have been otherwise concluded.

## IV. REMEDIES: The Amended Rules and The Purdy Plan

Subsequent to oral argument in this case, many controversial provisions of the district court's adoption of the Purdy Plan have become moot due to implementation of similar provisions for providing preliminary hearings under Florida's Amended Rules of Criminal Procedure. The parties are agreed, however, that the Purdy Plan went beyond the Amended Rules in certain respects. To the import of these remaining divergencies we now direct our attention.

### a) Time between arrest and preliminary hearing.

In the district court's Purdy Plan order, it was held:

"If incarceration is ordered, the magistrate must immediately schedule a preliminary hearing to be held within four (4) days [of initial appearance]." 336 F.Supp. 490, at 492.

The initial appearance under the Purdy Plan had to be within 3 hours of arrest. The new rules provide for a preliminary hearing within 72 hours, or 3 days, of initial appearance,[15] and such initial appearance is required within 24 hours of arrest. However, Rule 3.040 of the Amended Rules contains this proviso:

"When the period of time prescribed or allowed [under all rules other than 3.130] shall be less than 7 days, intermediate Saturdays, Sundays and legal holidays shall be excluded in the computation."

Thus appellants argue that a six day lapse is frequently allowed between arrest and preliminary hearing under the Amended Rules. This time lapse, they say, is beyond the constitutionally tolerable maximum and therefore denies them due process of law under the Fourteenth Amendment.

Whether a four-day lapse is constitutional while a six-day lapse is not would be a difficult factual question. We need not, however, face this nice question, because no appellant argues that he has been accorded a preliminary hearing more than four but less than six days after his arrest.

■ However, because the District Court's Purdy Plan order established an across-the-board four-day maximum lapse period which conflicts with Rule 3.040, we cannot allow both the Plan and the Rule to coexist in their inconsistency. We therefore vacate that portion of the Purdy Plan order which set a four-day maximum period on the ground that it was unnecessary to the disposition of this case.

### b) Exclusion of misdemeanants.

The appellants argue that since Rule 3.131(a) authorizes hearings before a neutral and detached judicial officer only "on any felony charge" the rule violates the Equal Protection Clause by denying such hearings to misdemeanants. We agree that this proviso to the Rule is constitutionally impermissible.

■ Plaintiff Henderson, who was charged with the misdemeanor of assault and battery under Florida Law and who had been incarcerated prior to trial without the benefit of a probable cause hearing, has standing to raise this point on behalf of himself and other incarcerated misdemeanants. Moreover, the proviso of the statute is so clear that we need not certify the question whether Rule 3.131(a) was intended to provide for preliminary hearings for misdemeanants. Clearly, it was not so intended.

No sufficient justification exists for disallowing preliminary hearings for misdemeanants. The plight of an accused misdemeanant incarcerated with-

---

15. Rule 3.131(b), Florida Rules of Criminal Procedure.

out a hearing is just as serious as that of an accused felon, and there is no merit to either of the two "compelling governmental interests" which the State contends are served by not prescribing hearings for misdemeanants.

First, the State argues it is concerned lest the same magistrate determining probable cause in a misdemeanor case try that very case, denying the defendant a fair trial. The answer to this is not the denial of preliminary hearings, but the development of a system whereby judges are rotated to prevent such overlap. Indeed, the Chief Judge of the Magistrate Division of the Eleventh Judicial Circuit has already testified that preliminary hearings and misdemeanor trials are currently conducted by separate panels of judges in Dade County.

■ Second, it is argued that the State cannot bear the expense of providing preliminary hearings for misdemeanants. The trial court found that

"while more magistrates as well as courtroom facilities may be needed as a result of our order, and that costs may increase in the short run, it will not be a significant increase."

This finding was amply supported. The number of misdemeanor cases involving no pretrial incarceration and requiring no preliminary hearing comprised the bulk of all misdemeanors. Moreover, experience from the felony-hearing system showed a reduction in felony caseloads and a savings to the taxpayers of the county.[16]

■ Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), which held that misdemeanants threatened with potential incarceration must be afforded counsel at State expense, provides guidance in this case.

In *Argersinger*, Mr. Justice Douglas, speaking for the majority of the Court, noted that many rights required under the due process clause of the Fourteenth Amendment [17] apply irrespective of the classification of the charge pending against the defendant who faces potential incarceration. We believe the right to a preliminary probable cause hearing before a defendant is subjected to pretrial incarceration is as essential to due process as those rights listed in and extended by *Argersinger*. Therefore, except where misdemeanants are out on bond or are charged with violating ordinances carrying no possibility of pretrial incarceration,[18] they must be accorded preliminary hearings. In short, the offense charged is irrelevant to the man incarcerated prior to trial; he must, therefore, be afforded a preliminary hearing regardless of his status as an accused misdemeanant or an accused felon.

*c) Delayed hearings in capital or life imprisonment cases.*

■ Rule 3.131(b) of the Florida Rules of Criminal Procedure provides:

"In all cases where the defendant is in custody, except capital offenses or offenses punishable by life imprisonment, the preliminary hearing shall be held within 72 hours of the time of the defendant's first appearance. *In all capital offenses and offenses punishable by life imprisonment* and in all cases where the defendant is not in custody, *the preliminary hearing shall be held within seven days of the time of defendant's first appearance.*"

Though we know of no Florida decision interpreting whether "within seven days" is covered by the Rule 3.040 provi-

---

16. See text *supra* at p. 22.

17. Included in this listing were rights to a "public trial," to be informed of the nature and cause of the accusation, to confront one's accusors, and to have compulsory process for obtaining witnesses in one's favor.

18. These offenses, which probably include those referred to by the district court as "prosecutions of the barking dog variety," may reasonably be screened by the State Attorney alone at the request of complaining citizens because the defendant in such cases is not confined prior to trial.

so, *supra*,[19] we need not attempt to divine how these rules would dovetail since we are convinced that even if Rule 3.131(b) is outside the time limit set in Rule 3.040, any preliminary hearing delay which discriminates against those accused of capital or life imprisonment offenses violates the Equal Protection Clause.

Under Rule 3.131(b), Florida has classified these types of offenses in a manner which disadvantages the party charged with the more serious offense even though the defendant has not yet had any opportunity to contest the basis for his arrest. In order to justify this discrimination, Florida must make some showing that there are factors requiring different treatment of these offenses from the treatment given to other felonies. While four days may be a reasonable time, as the district court found, to allow witnesses to be summoned and other mechanical tasks to be performed, Florida has made absolutely no showing that it requires more time to handle the mechanics of a preliminary hearing where life or capital offenses are involved than in other felony or misdemeanor cases. In the absence of such showing, we find that Rule 3.131(b) is inconsistent with the demands of the Equal Protection Clause insofar as it delays the preliminary hearings of persons in Robert Pugh's position.[20]

### d) Sanctions against the State in the event of noncompliance.

To ensure prompt implementation of its requirement of probable cause preliminary hearings, the district court included the following paragraph in its Purdy Plan order:

"17. If the magistrate discharges the defendant, the defendant shall not be required to answer to a subsequent charge for the same offense(s) except upon an indictment by the Grand Jury which shall have been returned within thirty (30) days of the defendant's discharge." 336 F.Supp. at 492.

"19. . . . (2) If a defendant is not afforded a preliminary hearing within the applicable period set forth in paragraph (8) herein and the hearing is not properly postponed or waived, then all charges shall be withdrawn and the defendant, if incarcerated, shall immediately be released. The State shall be permitted to refile a charge so withdrawn, however, in the event a charge is twice withdrawn pursuant to this provision, the defendant shall not again be held to answer to that charge except upon an indictment of the Grand Jury returned within thirty (30) days of the date of the second withdrawal." 336 F.Supp. at 493.

These paragraphs were at the time considered necessary by the court as a means for overcoming Florida's long-standing practice of denying preliminary hearings to criminal defendants.

Since Florida's practices have presumably been altered drastically with the adoption of the Amended Rules and preliminary hearings should now be an accepted procedure throughout the State, we vacate these two provisions in the Purdy Plan. The factors involved in the imposition of sanctions having changed significantly since the Purdy Plan was issued, the District Court's exercise of equitable power should be modified to account for these changes. At least until such time as experience shows that Dade County's judiciary and constabulary are not following the Rules of Criminal Procedure as modified to extend the right of preliminary hearings in accordance with this opinion, we will not presume that such onerous sanctions are necessary to insure compliance with the law of this circuit.

The judgment of the District Court is affirmed in part and vacated in part.

19. If this were the case, a lapse of 10 calendar days between arrest and preliminary hearing would be permitted.

20. Pugh was charged with robbery, a crime punishable by life imprisonment in Florida. See fn. 9.