316 So.2d 385 (1975)
STATE of Louisiana
v.
Donald Ray PERKINS.
No. 55941.
Supreme Court of Louisiana.
March 14, 1975.
Writ denied. No error of law in the ruling below.
BARHAM, J., dissents from refusal of writ application and assigns reasons.
BARHAM, Justice, dissenting from Writ Denial.
After trying for many years to eliminate that portion of the Louisiana Code of Criminal Procedure which provides for a "Preliminary Examination," a majority of this Court may have finally tolled the knell for Title 7 of the Code of Criminal Procedure. In a preliminary hearing conducted in the Nineteenth Judicial District, the judge and the State's attorney, apparently by pre-trial conference, decided to attempt to emasculate the meaningful preliminary examination provided for in La.C.Cr.P. arts. 291 through 298. See appendix for the brief but full transcript of the examination into probable cause permitted by that court. The State called only one witness, a deputy sheriff, who related only hearsay and double hearsay to attempt to carry the State's burden to establish probable cause. The defendant objected to the first hearsay sought by the State's attorney and to that objection the court replied,
"Yes, sir. We, uh, are going to plow new ground today. We're going to hold that heresay [sic] evidence is going to be admissible at a preliminary examination. If you want to object to it, then for the record, I'll overrule the objection."
The hearing conducted is a farce in light of the express codal provisions which define and set forth the guidelines for a preliminary *386 examination. A probable cause finding was made by the trial court without any competent evidence being adduced. The preliminary examination envisioned by the redactors of the Code of Criminal Procedure is in no way related to the animal which was created in this proceeding we review. The proceeding we review is in the nature of a committing magistrate's hearing for the purpose of initially fixing bail after arrest. Our code does not expressly provide for this kind of hearing.
First, under Article 292, either the State or the defendant may request a preliminary examination and before indictment or the filing of an information it must be ordered. Article 293 is an elucidative pronouncement that the proceeding cannot be ex parte or without counsel for defendant. It provides that when a preliminary examination is ordered, the Court shall conduct the examination promptly "* * * but shall allow the defendant a reasonable time to procure counsel." (Emphasis here and elsewhere supplied.) The most pertinent provision of the title of the code dealing with preliminary examinations is Article 294, where it is clearly expressed that our preliminary examination is a full-blown adversary proceeding in which the defendant is entitled to confront the witnesses and to have full cross-examination of them. That article provides:
"At the preliminary examination the state and the defendant may produce witnesses, who shall be examined in the presence of the defendant and shall be subject to cross-examination. The defendant may also testify, subject to cross-examination.
"A transcript of the testimony of the witnesses, including that of the defendant, shall be made by the court or under its direction, and signed and certified by the person taking the testimony."
The Official Revision Comment is most pertinent for an understanding of the intent of the legislature in adopting the article. That comment states:
"The provision of this article requiring the presence of the defendant during the examination of witnesses and giving him the right to cross-examine them, is based on A.L.I. Code, § 46, and is in accord with the laws of the majority of the other states."
That provision is new in our law because the redactors believed that:
"(a) * * * in all probability the guarantee of Const. Art. 1, § 9, (1921) that the accused shall be confronted with the witnesses against him, would apply to preliminary examinations." Official Revision Comment to La.C.Cr.P. art. 294.
The comment cites State v. Chambers, 44 La.Ann. 603, 10 So. 886 (1892), which held that,
"* * * the taking of the deposition of the witness, and its use in the trial of the accused, violate article 8 of the constitution of the state [the Constitution of 1879, the forerunner of Article 1, § 9 of the 1921 Constitution] which contemplates a public trial, or preliminary examination, in the course of which the accused has the right to be confronted with witnesses against him. * * *"

The comment goes on to state that the redactors have followed the A.L.I. Code of Criminal Procedure, § 46, which is "* * * in accord with the laws of the majority of the other states" on the right of confrontation of the witnesses through cross-examination.
The purposes of the preliminary examination which our legislature envisioned are three-fold: (1) to determine from the witnesses against the defendant whether there is probable cause for detention; (2) to determine if the defendant is entitled to bail and, if so, in what amount; and (3) to preserve the testimony of the witnesses for possible use in a subsequent judicial proceeding. La.C.Cr.P. arts. 295 and 297 provide for the perpetuation of the testimony *387 and the evidence adduced at the preliminary hearing and describe the uses to be made of that evidence. If the court finds probable cause after hearing the witnesses against the defendant "* * * the court shall fix his bail if he is entitled to bail." La.C.Cr.P. art. 296. La.C.Cr.P. art. 298 provides that a preliminary examination should not be declared invalid or a defendant released because of harmless error or informality when that error does not substantially prejudice the defendant. However, this has nothing to do with relaxing the other provisions to the extent that the defendant can be denied the right to confront the witnesses against him.
The right of confrontation of the witnesses is the antithesis of hearsay evidence. The courts have persisted in their refusal to admit hearsay evidence in criminal proceedings, for to do otherwise would be an unconstitutional deprivation of the defendant's rights to confront the witnesses against him.
I am amazed at the insensitivity of the majority of this Court to the newly stated principle in the Louisiana Constitution of 1974. The drafting body and the people of this State have raised the right to a preliminary examination to the constitutional level. Article 1, § 14 states: "The right to a preliminary examination shall not be denied in felony cases except when the accused is indicted by a grand jury." We have previously provided statutorily that there was an absolute right to a preliminary examination before grand jury indictment or a district attorney's bill of information and that thereafter the preliminary examination was discretionary with the court. See La.C.Cr.P. art. 292 as it appeared before its amendment by Acts 1974, Ex.Sess. No. 16, § 1. The constitution permits only one exception now and that is following grand jury indictment. However, that constitutional exception must be read in light of Gerstein v. Pugh, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).[*] The Supreme Court of the United States has clearly pronounced that "* * * the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint on liberty following arrest." Gerstein, supra, at 863 of 95 S.Ct.
It is true that the United States Supreme Court would permit a less formal preliminary examination than is required in Louisiana but that does not permit this Court to disregard positive legislative and constitutional expression which provides more extensive rights than those which the United States Supreme Court has made mandatory. If the view expressed by the majority in its action in this writ denial prevails, they have eviscerated one complete title from the Code of Criminal Procedure. I do not quarrel with this Court creating a hearing immediately after arrest before a committing magistrate for an initial showing of probable cause to detain and the fixing of the initial bail; such a proceeding can co-exist with the preliminary examination which our legislature has created. Nevertheless, this Court cannot and should not pre-empt the legislature by repealing a complete chapter in the Code of Criminal Procedure.
This Court has, through a number of cases, fought a series of battles to determine if the preliminary examination would be accorded meaningful purpose as intended by the legislature. The view that it should accord that kind of preliminary examination finally prevailed in this Court in State v. Jackson, 282 So.2d 526 (La.1973).
*388 In writ denials thereafter the Court began to erode the principle once again in State v. Marshall, 284 So.2d 778 (La.1973), State v. Doyle, 290 So.2d 903 (La.1974), State v. Renard, 296 So.2d 833 (La.1974), and State v. Monroe, 299 So.2d 795 (La.1974). To those of the Court who sought to limit the right to preliminary examination, the people of this State spoke clearly in the Constitution of 1974 under the declaration of rights in Article 1, § 14.
I am constrained to speak so strongly upon this action by the majority because it is both a usurpation of the legislative power and a disregard of the people's new expression through the Constitution which we are just beginning to interpret and apply. I am of the opinion that as we construe legislation, we must be ever mindful of the directions voiced by our citizens in the new Constitution. That Constitution has enlarged the rights of individuals in some cases beyond the provisions of the United States Constitution. This is the right of the people of the State of Louisiana. It is our obligation to apply that constitution in every case where it does not conflict with or limit the rights and privileges guaranteed by the United States Constitution.
The majority here have disregarded the positive, clear expression of our Code of Criminal Procedure and have ignored the people's intent and purposes as expressed in the new Constitution. I believe that the majority has acted through lack of understanding of the serious consequences which will follow unless this issue is carefully studies and then resolved with full knowledge and understanding. I am therefore hopeful that when this issue is presented again, this Court, after careful study and reflection, will follow the clear expression of law by statute and constitution.
I respectfully dissent.

APPENDIX

DECEMBER 6, 1974
The preliminary hearing of this matter was begun:
ROBERT W. WATTS, called as a witness for the State, having first been duly sworn, testified as follows:

DIRECT EXAMINATION
BY MR. HESTER:
Q State your name and occupation, please.
A Robert W. Watts; Deputy Sheriff; East Baton Rouge Parish Sheriff's Office.
Q And were you so employed October 22nd of this year?
A Yes, I was.
Q O.K. did you, on that date, have occassion to talk to a Larry Brantley?
A Yes.
Q And uh, there was another victim in this thing, wasn't there?
A Yes. I didn't talk to the other victim that day, though.
Q But you talked to Larry Brantley that day?
A Yes, that's the only one I did.
Q Now, this was in reference to what?
A Uh, armed robbery of a residence.
Q What did Mr. Brantley relate to you?
MR. SIMMONS: Objection, Your Honor.
THE COURT: Yes, sir. We, uh, are going to plow new ground today. We're going to hold that heresay evidence is going to be admissible at a preliminary examination. If you want to object to it, then for the record, I'll overrule the objection.
MR. SIMMONS: We'd like to object to the Court's ruling, Your Honor, and ask that same be made part of our assignment of errors.
Q What did he relate to you?
*389 A He stated that about one-thirty that morning, he and his roommate were upstairs in their house and a knock on the door occurred; and his roommateI can't remember his roommates name at this timehe said that he went down to theto answer the door and uh, at this time two colored males were at the door and asked for Larry Brantley. At which time, uh, Mr. Brantley's roommate called him downstairs and said that the company was for him. And upon uhMr. Brantley stated to me that as he came down and asked what the two people wanted, one pulled a gun on him and uh, they asked for all their money and any dope they had in the house; any marijuana or anything and uh, harrassed them and threatened them with the gun and cocked the gun in their face and just went of for several minutes and then theyMr. Brantley stated that after awhile, they finally left.
Q Did they take anything?
A Mr. Brantley said theyI think it was about fifty or sixty dollars they got from them.
Q In money or dope?
A In money. He said they just threw their wallets on the floor and change and the two men picked them up. And uh, this was later in the afternoon when I was talking to himI believe around twelve o'clock and uh, after I took his statement and everything and was writing the report, uh, Mr. Brantley called me back and stated that the had just seen one of the men that had robbed him previously sitting on a car in uhon Texas Street. I forget the blockdressed, I think, in a yellow shirt with a red bandana. So, at this time, myself and Deputy Fourrier rode down there and there was onethe defendantDonald Ray Perkins was who matched the description of the clothing. So we took him downtown and for questioning and we put him in Room B07 where the two-way mirror is in the courthouse and at this time let the
MR. SIMMONS: Objection, Your Honor. He's not supposed to testify as to any identification anybody else has made.
THE COURT: Yes, sir. Well, I'm going to overrule the objection.
MR. SIMMONS: I'd like to object to the Courts ruling and ask the same be made part of our assignment of errors at this time.
Q Go ahead.
A Andlet's see
Q You brought him into the room, you said?
A Yeah, I brought Perkins into the room.
Q And did you have Mr. Brantley view him from the other side?
A Yes.
Q Was he able to identify him?
A Yes, he said that was the one that had the gun on him.
Q The one with the gun?
A Right.
Q O.K. That's all I have. I tender.

CROSS EXAMINATION
BY MR. SIMMONS:
Q Do you have any uh, way of knowing officer, as to whether or not Mr. Brantley was in fact telling the truth?
A No, sir, I don't. The only thing I took a statement from him and his roommate.
Q Are you sure it waswhat did his roommate say?
*390 A Basically the same thing as I said before. Do you want me to repeat it?
Q No, sir. Basically the same thing?
A Right. Basically the same thing.
Q Did he also identify this man?
A No, uh uh, we didn'tI did not take him up to the Parish Prison.
Q No further questions.

REDIRECT EXAMINATION
BY MR. HESTER:
Q Did you make any statements involving the possibility of putting these two people on the polygraph?
A Yes, I did. I told both witnesses that they would probably have to go on a polygraph with the Sheriff's Office. Lieutenant Zulkey would run it because whil questioning Mr. Perkins and advising him of his rights, he stated that he had been at their house at that night. He and Ray Milton Carroll
MR. SIMMONS: I'm objecting to that, Your Honor.
MR. HESTER: O.K. I haven't laid any foundation. That's o.k.
Q What was their response to that?
A They said that they would go be on the polygraphbe willing to be placed on it, but at this time, we haven't found them.
Q To the best of your knowledge, was this ever done?
A No, sir, it wasn't.
Q O.K. Thank you. I tender.
MR. SIMMONS: No further questions.
MR. HESTER: Thank you, sir.
(Witness excused.)
MR. HESTER: Call Larry Brantley.
MR. SIMMONS: He's not here.
MR. HESTER: Call Kenneth Murphy.
MR. SIMMONS: He's not here.
MR. HESTER: Judge, we've issued bench warrants on those. I don't know if they've been executed or not.
THE COURT: I'm sure they're out looking for them.
MR. HESTER: The State will rest.
MR. SIMMONS: Your Honor, we don't wish to put on any testimony concerning the uh, probable cause aspect of the hearing. There's also a motion for bond reduction. In that connection, we'd like to put on at least one member of the defendant's family.
THE COURT: All right. The ruling on the preliminary examination then will be that probable cause has been established to hold the accused for the charge of Armed Robbery.
NOTES
[*] Subsequent to the decision of the United States Court of Appeals for the Fifth Circuit in Pugh v. Rainwater, 483 F.2d 778 (5th Cir. 1973), both Pugh (plaintiff-appellee in the Fifth Circuit) and Gerstein (the Florida State Attorney and one of the defendants-appellants in the Fifth Circuit) applied to the United States Supreme Court for certiorari. Gerstein's application was granted, 414 U.S. 1062, 94 S.Ct. 567, 38 L.Ed.2d 467 (1973), but Pugh's application was denied, 414 U.S. 1077, 94 S.Ct. 595, 38 L.Ed.2d 484 (1973). Hence, the case is styled Gerstein v. Pugh in the United States Supreme Court.